JUSTICE NELSON
specially concurs.
I concur with the Court’s opinion. ;My concern is with the Justice Weber’s dissent. I submit that the dissent neither correctly interprets the Court’s opinion nor does it accurately reflect the current state of the law on absolute quasi-judicial immunity applicable to state prosecutors.
The dissent suggests that any act or omission by a prosecutor which in any way relates to the filing of or maintaining of a criminal charge is closely associated with the judicial pháse of a criminal proceeding and is, therefore, entitled to absolute immunity. That, presently, is not the law, if it ever was. Moreover, to the extent that the dissent is read to suggest that we have departed from existing legal concepts defining the scope of or have diminished the protections afforded by absolute quasi-judicial immunity traditionally enjoyed by prosecutors, that, too, is wrong. We have merely applied decades-old controlling legal precedents and concepts to the facts at issue.
At the outset, it is important to keep in mind what this case is about. The immunity issue arose because the District Court granted summary judgment to the County notwithstanding that, according to the record, the parties conceded that there was a factual dispute over whether the report did or did not indicate that Smith was suicidal. The District Court simply concluded that the factual dispute did not count, because, as a matter of law, absolute immunity barred plaintiff’s claim. It is the District Court’s legal conclusion in that regard that we find in error. The factual question as to whether the *19 report does or does not indicate a potentially suicidal defendant remains a question to be decided by the jury.
The narrow legal question which we address is whether absolute quasi-judicial immunity attaches to the prosecutor’s failure to pass along to the sheriff allegedly life-saving information contained in the mental status report from the State Hospital. Our opinion on that issue does not in any way diminish the application of absolute quasi-judicial immunity to the county attorney’s decision to request the mental status evaluation in the first place or to his use of the report in maintaining the criminal prosecution against the defendant.
The dissent fails to appreciate or acknowledge the very real and important distinction between, on the one hand, the prosecutorial function of ordering a mental status report and evaluating and utilizing that report with regard to determining the defendant’s state of mind at the time of the commission of the offense and with regard to his present ability to stand trial and assist in his own defense, and, on the other, the failure to advise the authority incarcerating the defendant of information contained in that report which may indicate that the defendant is suicidal and which, if available to the j ailer, may assist him in preventing that suicide.
While the dissent would have the Court simply ignore that distinction under the broad-brush rationale that any consideration or interpretation of the report by the county attorney is intimately associated with the judicial phase of the criminal process and intimately connected to his duties as a prosecutor, current federal case law, binding upon the courts of this State, compels a decidedly different approach and a much finer analysis than the dissent is willing to accord this issue.
In determining whether the actions of government prosecutors fit within the common-law tradition of absolute quasi-judicial immunity, the United States Supreme Court has, since at least 1976, applied what is characterized as a “functional approach” or analysis.
In Imbler v. Pachtman (1976), 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, the Court first addressed the immunity of state prosecutors from civil rights suits. Noting that prior immunity decisions were “predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it,” Imbler, 424 U.S. at 421, 96 S.Ct. at 990, the Court held that a state prosecutor had absolute immunity for the initiation and pursuit of a criminal prosection, including presentation of the state’s case at trial. Imbler, 424 U.S. at 431, 96 S.Ct. at 995-96. The Court’s analysis focused on the functions of the prosecutor that had *20 most often invited common law tort actions, and, while concluding that prosecutors were entitled to absolute immunity for conduct “intimately associated with the judicial phase of the criminal process,” Imbler, 424 U.S. at 430, 96 S.Ct. at 995, the Court did not attempt to describe the line between a prosecutor’s acts in preparing for those functions, some of which were absolutely immune, and his acts of investigation or “administration,” which were not. Imbler, 424 U.S. at 430, 431, 96 S.Ct. at 995, 996.
In State, Etc. v. Dist. Ct., 8th Judicial Dist. (1977), 172 Mont. 88, 560 P.2d 1328, citing Imbler and the principles underlying the doctrine of quasi-judicial, prosecutorial immunity, we concluded that the prosecutor and his employer, the Department of Justice, were absolutely immune from a civil suit alleging that criminal charges were wrongfully and maliciously filed against the plaintiffs.
Similarly, in Ronek v. Gallatin County (1987), 227 Mont. 514, 740 P.2d 1115, citing Imbler and Dept. of Justice, we, again, concluded that absolute immunity barred the plaintiffs’ civil suit for malicious prosecution and civil rights violations filed against the County and arising out of the prosecutor’s filing and then dismissing criminal charges against the plaintiffs.
In both Dept, of Justice and Ronek, the prosecutorial function which invoked the application of absolute quasi-judicial immunity was the filing and maintaining of criminal charges; in both cases, the doctrine was correctly applied to protect precisely the type of prosecutorial conduct which was, historically, and, still is, protected under the common-law tradition of absolute quasi-judicial immunity. As in Imbler, in neither case was there any necessity to distinguish between a prosecutor’s acts in preparing for initiating a prosecution and in presenting the State’s case — functions historically entitled to absolute quasi-judicial immunity — and acts of investigation or administration — functions which were not historically entitled to protection of the doctrine.
In Burns v. Reed (1991), 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547, the Court’s immunity analysis was, again, driven by application of the functional approach to the prosecutor’s conduct at issue. In that case the Court concluded that appearing before a judge and presenting evidence in support of a motion for search warrant was involved with the prosecutor’s “ ‘role as advocate for the State,’ ” Burns, 500 U.S. at 486, 111 S.Ct. at 1939, quoting Imbler, 424 U.S. at 431, n.33, 96 S.Ct. at 995-96, n.33. Such conduct was a prosecutorial function entitled to absolute immunity because issuing a search warrant is a *21 judicial act, and appearance at the probable-cause hearing was “ ‘intimately associated with the judicial phase of the criminal process.’ ” Burns, 500 U.S. at 486, 111 S.Ct. at 1939, quoting Imbler, 424 U.S. at 430, 96 S.Ct. at 994-95.
On the other hand, the Burns Court held that absolute immunity did not attach to the prosecutor’s giving legal advice to the police. Burns, 500 U.S. at 496, 111 S.Ct. at 1944-45. On that issue, the Court’s analysis is instructive for purposes of our decision in the instant case. As it did in Imbler, the Court initially focused on the historical common-law interests underlying absolute immunity and noted that it could identify no historical nor common-law support for such an extension of the doctrine. Burns, 500 U.S. at 492, 111 S.Ct. at 1942-43.
Next, the Court considered whether the risk of vexatious litigation would support absolute immunity for giving legal advice. In that regard it concluded that the purpose of absolute immunity was to “free the judicial process from the harassment and intimidation associated with litigation,” [citing Forrester v. White (1988), 484 U.S. 219, 226, 108 S.Ct. 538, 543, 98 L.Ed.2d 555], and “[t]hat concern, therefore, justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor’s role injudicial proceedings, not for every litigation-inducing conduct.” Burns, 500 U.S. at 494, 111 S.Ct. at 1943.
Importantly, the Court rejected the same sort of broad-brush approach as that offered by the dissent in the instant case. In Burns the United States argued that giving legal advice is “...related to a prosecutor’s roles in screening cases for prosecution and in safeguarding the fairness of the criminal judicial process.” Burns, 500 U.S. at 495, 111 S.Ct. at 1944.
That argument, however, proves too much. Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.
Burns, 500 U.S. at 495, 111 S.Ct. at 1944.
Most recently, in Buckley v. Fitzsimmons (1993), 113 S.Ct. 2606, 125 L.Ed.2d 209, the Court once again stressed the necessity to closely analyze claims of absolute prosecutorial immunity under the functional approach adopted in Imbler and utilized in Burns. Once again, the Court rejected the broad-brush analysis of the Court of Appeals which had concluded that the state prosecutor was entitled *22 to absolute immunity "... because the injuries suffered by petitioner occurred during criminal proceedings.” Buckley, 113 S.Ct. at 2615.
That holding is contrary to the approach we have consistently followed since Imbler ... [which] focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.
Buckley, 113 S.Ct. 2615.
# # ifc ‡ ¡‡
[A]s the function test of Imbler recognizes, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor.
Buckley, 113 S.Ct. at 2615, quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995.
In Buckley, using the functional approach, the Court held that the prosecutor in that case was not entitled to absolute immunity for alleged misconduct involving investigative and administrative activities in searching for clues and corroborating evidence for purposes of determining probable cause, or for alleged false statements made during the public announcement of a murder indictment. Buckley, 113 S.Ct. at 2616-2617.
As in Imbler and in Burns, the Court in Buckley looked to the functional tie of specific conduct of the prosecutor to the judicial process and to whether the prosecutor was acting in his role as advocate for the State and regardless of whether the conduct at issue might have been integral to the prosecutor’s job and might even have served a vital public function. Buckley, 113 S.Ct. at 2618.
While the dissent would have us not pick and choose conduct, that is precisely what the U.S. Supreme Court cases require that we do. We must focus on whether the act of omission at issue is entitled to immunity, not whether the prosecutor is immune for whatever he does in that capacity. As pointed out in Forrester, a case in which the Court applied the same functional approach to a judicial immunity issue,
[d]ifficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.
Forrester, 484 U.S. at 227, 108 S.Ct. at 544. Itis the nature ofthe function performed, not the identity of the actor who performs it, which drives immunity analysis. Forrester, 484 U.S. at 229, 108 S.Ct. at 545.
*23 Given Imbler, Burns, and Buckley, this Court is, likewise, compelled to analyze the immunity issue in this case by focusing on the specific prosecutorial conduct at issue and by then determining whether such conduct is functionally tied to the judicial process and involves the prosecutor acting in his role as advocate for the State in initiating and maintaining the criminal prosecution and presenting the State’s case at trial. In doing so, we must reject the broad-brush proposed by the dissent, as did the United States Supreme Court in the three federal cases cited.
Using that approach, here, and focusing, as we must, on the specific act or omission at issue, we have correctly determined that, while the prosecutorial function of ordering a mental status report and evaluating and utilizing that report with regard to determining the defendant’s state of mind at the time of the commission of the offense and with regard to his present ability to stand trial and assist in his own defense is functionally tied to the judicial process and involves the advocacy role of the prosecutor in initiating and maintaining the criminal prosecution, the alleged failure to advise the authority incarcerating the defendant of information in that report which might indicate that the defendant is suicidal does not serve that function nor meet that test. While absolute quasi-judicial immunity will attach to the prosecutor’s conduct in the first instance, it will not apply in the second; absolute quasi-judicial immunity is not available as a defense to plaintiff’s complaint in this case.
Accordingly, I concur.
JUSTICE TRIEWEILER concurs in the foregoing special concurrence.